Patrick R. JACKSON, Appellant,

v.

UNITED STATES, Appellee.

No. 9689.

District of Columbia Court of Appeals.

Argued March 17, 1976.

Decided May 11, 1976.

---

Etta Green Johnson, law student counsel appointed by the court, with whom Susan Chalker, Washington, D. C., also appointed by the court, was on the brief, for appellant.

D. Michael Stroud, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and James N. Owens, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before FICKLING, GALLAGHER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted of unlawful entry. D.C.Code 1973, § 22–3102. He argues that his conviction cannot stand because: (1) he was a tenant by sufferance in the premises involved; (2) he had a good faith belief that he had a right to be on the premises; and (3) the trial court erred in refusing to dismiss the information on the ground that the complaining witness no longer wanted to proceed against him. Appellant also contends that the United States Attorney's office breached its statutory obligation to refer the dispute to the Director of Social Services as an intrafamily offense pursuant to D.C.Code 1973, § 16–1002(a). We affirm.

Appellant was arrested after his girlfriend, Cynthia Celey, with whom he had been living, went to a police station to complain that he was in her apartment destroying her property.[1] Metropolitan Police Officer Larry Rosenberger returned with Celey to her apartment. They encountered appellant, who was angered by the fact that Celey had gone to get the police. Appellant refused to leave the apartment, although both Celey and the officer directed that he do so. When appellant's obstinance turned to violence, the officer subdued and arrested him.

The government's evidence consisted of the testimony of Celey and Officer Rosenberger. Celey stated that the apartment was leased to her, that she paid the entire rent, and that when she asked appellant to leave he refused to go. On cross-examination, she testified that she and appellant had been living together for more than two months. Although she acknowleged that appellant had given her some furniture and had, at times, bought food, she stated that there was no agreement between them to share the responsibility of maintaining the apartment. Celey also conceded that after making the initial complaint, she had made some attempt to persuade the government to drop the charges against appellant, but she had been told it was "too late" to do so.

A motion for a judgment of acquittal, based upon the argument that appellant shared co-equal responsibility for the premises and therefore had the right to remain thereon, was denied.

Appellant testified on his own behalf. He said that he had supplied several articles of furniture and some food for the apartment. Although he acknowledged that he had understood Celey's direction that he leave the apartment and had recognized the sincerity thereof, he persisted in thinking that he rightfully could remain. When questioned by the prosecutor, appellant admitted that he paid no rent and that he and Celey had made no agreement to share expenses for the apartment.

◼ The record does not support appellant's claim to have been a tenant by sufferance. D.C.Code 1973, § 45–820 defines a tenancy by sufferance, and provides that it includes "all verbal hireings [*sic*] by the month or at any specified rate per month". It is appellant's contention that the furnishings and food which he chose to give to Celey constituted consideration in lieu of monthly rent. However, there is no testimony in the record which indicates that such an arrangement was within the contemplation of either party. There is no evidence that Celey expected anything by way of formal consideration to permit appellant to stay in her apartment. Appellant's own testimony made it clear that there was no agreement between himself and Celey concerning "rent and everything." Appellant simply was occupying Celey's apartment rent-free and at her indulgence. Such an arrangement is not a tenancy by sufferance. *Smith v. Town Center Management Corp.*, D.C.App., 329 A.2d 779 (1974).

---

1. When she left her apartment to seek help, she heard the sound of shattering glass. She later discovered that the only damage done was the breaking of several glasses.

■ Appellant also contends that he had a bona fide belief that he had the right both to enter and remain in the apartment. This belief, he argues, negated the general criminal intent which is an element of the offense of unlawful entry. While we have said that innocent entry upon unmarked or ambiguously marked premises may constitute a defense to a charge of unlawful entry,[2] that concept does not extend to cover the present situation. To be sure, appellant entered and remained in the apartment lawfully when he had Celey's permission to do so. However, when it became clear to him, as he testified it had, that she was ordering him to leave, any grounds for a bona fide belief in his right to remain lapsed.[3] A bona fide belief must have some reasonable basis before an accused can claim that such a belief exonerates his behavior. *Smith v. United States,* D.C.App., 281 A.2d 438, 439–40 (1971).

■ Appellant argues further that the trial court should have dismissed the charge because the complaining witness no longer wished to go forward. This position is invalid. The decision on what charges shall be prosecuted rests with the government,

and the exercise of that discretion is not subject to supervision by the court. *See United States v. Shaw,* D.C.App., 226 A.2d 366, 368 (1967) ; *Newman v. United States,* 127 U.S.App.D.C. 263, 264, 382 F.2d 479, 480 (1967).[4]

■ Finally, appellant urges that his conviction should be reversed since the government did not refer his case to the Director of Social Services for consideration as an intrafamily offense.[5] This argument was not made below, and therefore would be cognizable on appeal only if it reached the level of plain error. *See Smith v. United States,* D.C.App., 295 A.2d 64, 68 (1972), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973) ; *see also In re W. E. P.,* D.C.App., 318 A.2d 286, 289 (1974). We see no merit in the contention.

Initially, it is not at all clear that the relationship between appellant and Celey was close enough to bring it within the contemplation of § 16–1001(1)(C).[6] They had lived together for less than three months. Celey's testimony made it clear that she considered the apartment to be hers, with appellant merely staying there with her at her pleasure. Appellant and Celey had no

2. *See Smith v. United States,* D.C.App., 281 A.2d 438 (1971) ; *McGloin v. United States,* D.C.App., 232 A.2d 90 (1967) ; *Bowman v. United States,* D.C.App., 212 A.2d 610 (1965).

3. The statute not only prohibits unauthorized entries onto property, but also provides that a person violates the statute when such person . . . without lawful authority to remain therein or thereon shall refuse to quit the same upon the demand of the lawful occupant, or of the person lawfully in charge thereof . . . .

4. We concur in the view expressed by then-Circuit Judge Burger that:

We do our assigned task of appellate review best if we stay within our own limits, recognizing that we are neither omnipotent so as to have our mandates run without limit, nor omniscient so as to be able to direct all branches of government. The Constitution places on the Executive the duty to see that the "laws are faithfully executed and the responsibility must reside with that power." [*Newman v. United*

*States, supra,* 127 U.S.App.D.C. at 266 n. 9, 382 F.2d at 482 n. 9.]

5. D.C.Code 1973, § 16–1001(1)(C) defines an intrafamily offense as including an act committed

(C) by one person against another person with whom he shares a mutual residence and is in a close relationship rendering the application of this chapter appropriate.

6. The legislative history of this provision, enacted as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Act of July 29, 1970, Pub.L. No. 91–358, 84 Stat. 473, is meager. It does reveal, however, that the term "intrafamily" basically was intended to encompass "common-law arrangements". The legislative history also indicates that those offenses which are to be considered for possible handling as civil matters under the statute are those arising from conflicts between members of a family unit. *See Hearings on H.R. 13689 and H.R. 12854 Before Subcommittees 1 and 3 of the House Committee on the District of Columbia,* 91st Cong., 1st Sess., at 61 and 83 (1969).

children together; no other evidence tended to reflect that they were a family unit. In fact, appellant even gave his mother's address as his when he was arrested. These facts are in marked contrast to those present in *Robinson v. United States,* D.C.App., 317 A.2d 508 (1974), where the parties had a family-type relationship. The government was under no apparent obligation to notify the Director of Social Services of the offense in this case.[7]

*Affirmed.*

---

**7.** While the statute places the burden on the government to notify the Director of Social Services of an intrafamily offense, in *Robinson v. United States, supra,* 317 A.2d at 512, we noted our disinclination to reverse a conviction for its failure to do so when defense counsel—who is in a preferred position to know whether the alleged offense is intrafamily in nature—has remained silent on the question in the trial court.