**DISTRICT OF COLUMBIA, Appellant,**

v.

**Paul MURPHY, Appellee.**

No. 92–CV–283.

District of Columbia Court of Appeals.

Argued June 11, 1993.
Decided Sept. 2, 1993.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellant.

Samuel M. Shapiro, with whom David C. Merkin, was on the brief, for appellee.

Before FERREN, FARRELL, and KING, Associate Judges.

FERREN, Associate Judge:

Following his arrest by police officers employed by the District of Columbia, appellee Paul Murphy sued the District and the arresting officers for false arrest, negligence, assault and battery, false imprisonment, and malpractice. A jury awarded Murphy $260,000 in damages against the District on his claims for false arrest and assault and battery.[1] The trial court denied the District's motions for directed verdict and for judgment notwithstanding the verdict or a new trial and remittitur, and the District filed this appeal.

The District's primary contention on appeal is that it was entitled to a directed verdict or judgment n.o.v. because the un-

---

1. At trial Murphy withdrew his malpractice and negligence claims against the District and all claims against the police officers.

disputed evidence at trial showed that the police officers had probable cause to arrest Murphy.[2] After reviewing the record, we conclude that the District failed to present such undisputed evidence of probable cause to the trial court. Accordingly, we must affirm.

## I.

## A.

In the course of an encounter with the police on Sunday afternoon, September 27, 1987, Murphy sustained serious injuries, including several facial fractures so severe that they required two operations to repair. The operating physician testified that these injuries were comparable to those resulting from an auto accident or from a fall from great height. They could not have resulted from a single blow with a fist.

Murphy's clash with the police took place at an apartment on A Street, S.E., where Murphy was living with his girlfriend, Mary Young. The lease for the apartment listed Young as the sole lessee, although Murphy, according to his testimony, paid fifty percent of the rent and other household expenses.

Murphy testified at trial that, on the afternoon and evening before the incident, he and Mary Young had visited a friend to discuss renting a new apartment. Young had been drinking during the visit, and she fell asleep when they returned home later that night. The next morning, Murphy went out shopping for his mother. When he returned to the A Street apartment sometime around noon, Young told him that the police were coming. According to Murphy, she did not say why they were coming, and Murphy did not ask. He also testified that if Mary Young had wanted to keep him out of the apartment, all she had to do was ask him to leave.

Murphy sat down to begin watching a football game on television. Two police officers, a man and a woman, arrived and Young opened the door for them. Murphy acknowledged at trial that Young told the officers he had been "beating" and "hitting on her," although he also testified that he had not heard the details of this conversation because he was concentrating on the football game. Murphy, however, denied at trial that he had fought with Young on Saturday night and also denied that he had ever struck her.

According to Murphy, the male officer, after hearing Young's story, came over and touched Murphy on the arm. Murphy told the officer not to touch him. The officer went back and began talking with Young again. Then, according to Murphy, the male officer suddenly picked him up by his T-shirt, put him in a hold, and threw him against the wall while the female officer opened the door. The officers forced Murphy out of the door and down the steps. Murphy absolutely denied that either of the officers ever asked him to leave the apartment before they began to assault him physically.

Murphy further testified that, outside in the street, the male officer struck Murphy in the face and repeatedly threw him onto the hood of Murphy's car, bloodying Murphy's face. Then both officers held Murphy down while the male officer pushed

**2.** The District argues, further, that the trial court's alleged error in submitting appellee's false arrest and imprisonment claims to the jury also tainted the jury's verdict on appellee's assault and battery claim, thereby necessitating a new trial on that claim as well. Specifically, the District contends that the jury's decision on Murphy's assault and battery claim could not be separated from its decision on the false arrest and imprisonment claims because the officers would have been entitled to use some force to subdue Murphy in the course of a lawful arrest. See (Anne) Jackson v. District of Columbia, 412 A.2d 948, 956 (D.C.1980) ("In making an arrest, ... a police officer is privileged to use force unless the 'means employed are in excess of those which the actor reasonably believes to be necessary.'") (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 132 (1965)). The District also argues that, in any event, because the jury awarded damages in a lump sum for false arrest and assault and battery together, a new trial on damages for assault and battery alone would be required if we decided that the District was entitled to a directed verdict on Murphy's false arrest and imprisonment claims. Given our disposition of the District's primary argument on appeal, we need not address these other contentions.

Murphy's face into the ground. Murphy was not freed until a third police officer arrived on the scene and threw the first two officers off of him.

Mary Young testified on behalf of the District. She said that she had called the police because she and Murphy had gotten into a fight on Saturday night, during which he had hit her. According to Young's testimony, she had told Murphy that he had "better go" because the police were coming. When the officers arrived, Young told the officers that she was afraid of Murphy and wanted him to leave the apartment because he had fought with her the night before. There is no evidence in the record, however, that Mary Young ever informed the officers that she had already told Murphy to leave the apartment.

The police officers who responded to Mary Young's call, Darryl Young and Yvonne McCoy, also testified for the District. They stated at trial that, after hearing Mary Young's story, they had asked Murphy to leave several times and Murphy had ignored these directives. Mary Young confirmed this testimony. Officer Young then put his hands on Murphy's shoulder and told him that he was under arrest. Murphy began wrestling with Officer Young, and, according to the officers, Murphy and Officer Young exchanged blows. The officers then forced Murphy outside the apartment to the street, where they eventually subdued Murphy and handcuffed him with the assistance of backup officers. Officer Young then wrote up the papers for Murphy's arrest for unlawful entry and simple assault.[3]

### B.

At the close of Murphy's evidence at trial, the District moved for a directed verdict on his false arrest and false imprisonment claim. The trial court denied the motion on the ground that "the Plaintiff's evidence show[ed] facts from which the jury can conclude that the testimony of the Plaintiff is, 'I was doing nothing wrong, and I was arrested notwithstanding that

fact.' " The District renewed the directed verdict motion after resting its case. The trial court again denied the motion, concluding that "there was a controversy, in which [it could] not say either side [was] patently incredible, concerning whether or not this was a legitimate arrest in terms of probable cause." Finally, the trial court denied, without comment, the District's posttrial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial and remittitur. The District then filed this appeal.

### II.

"In actions for false arrest and false imprisonment, the central issue is 'whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails.'" *Scott v. District of Columbia,* 493 A.2d 319, 321 (D.C. 1985) (quoting *Dellums v. Powell,* 184 U.S.App.D.C. 275, 283, 566 F.2d 167, 175 (1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978)). A police officer may justify an arrest by showing that he or she had probable cause, in the constitutional sense, to make the arrest. *See Welch v. District of Columbia,* 578 A.2d 175, 176 (D.C.1990). The police officer, however, need not demonstrate probable cause in the constitutional sense. Rather, it will suffice if the officer can demonstrate that (1) he or she "believed, in good faith, that his [or her] conduct was lawful," and (2) this "belief was reasonable." *Scott,* 493 A.2d at 322 (citing *Wade v. District of Columbia,* 310 A.2d 857, 862 (D.C. 1973) (en banc) (internal quotation marks omitted); *accord Henderson v. District of Columbia,* 493 A.2d 982, 994 (D.C.1985); *Gabrou v. May Dep't Stores Co.,* 462 A.2d 1102, 1104 (D.C.1983); *Safeway Stores, Inc. v. Kelly,* 448 A.2d 856, 862 (D.C.1982). In evaluating an officer's claim that he or she acted in good faith in making an arrest, the trier of fact must consider the evidence from the perspective of the arresting offi-

---

**3.** According to Murphy's brief on appeal, the case against Murphy was dismissed because nei-

ther the police officers nor Mary Young appeared at Murphy's arraignment the next day.

cer, not of the plaintiff. *See Safeway Stores*, 448 A.2d at 862; *see also Dent v. May Dep't Stores*, 459 A.2d 1042, 1044 (D.C.1982).

In a false arrest case, the issue of probable cause is a mixed question of fact and law that the trial court should ordinarily leave to the jury. *See Safeway Stores*, 448 A.2d at 862; *see also Dent*, 459 A.2d at 1044. Where, however, "the undisputed facts considered in the light most favorable to the appellee establish probable cause, then a directed verdict or judgment n.o.v. is appropriate." *Safeway Stores*, 448 A.2d at 863; *see also Gabrou*, 462 A.2d at 1104.

Where, as here, we are reviewing the denial of motions for directed verdict and judgment notwithstanding the verdict, we "apply the same standard as the trial court in considering whether a jury could reasonably reach a verdict in favor of the opponent of the motion," viewing the evidence in the light most favorable to the nonmoving party. *Vassiliades v. Garfinckel's*, 492 A.2d 580, 586 (D.C.1985); *see also Washington Metro. Area Transit Auth. v. Davis*, 606 A.2d 165, 168 n. 4 (D.C.1992); *Kane v. Ryan*, 596 A.2d 562, 564 (D.C. 1991); *District of Columbia v. Cassidy*, 465 A.2d 395, 397 (D.C.1983).

■ Thus, the question we must answer is whether, considering the undisputed evidence in the light most favorable to Murphy, Officers Young and McCoy had probable cause to arrest him, or at least a reasonable, good faith belief that they were acting lawfully in doing so.[4] If the undisputed evidence shows such probable cause or reasonable belief, the District is entitled to reversal on the false arrest claim; otherwise, the jury's verdict must stand.[5]

### III.

The District maintains that the police officers had probable cause to arrest Murphy for both unlawful entry and simple assault. We consider the unlawful entry argument first.

The offense of unlawful entry includes not only cases where a person enters property without lawful authority, but also cases where a person who has entered the premises with permission subsequently refuses to leave after being asked to do so by someone lawfully in charge. *See* D.C.Code § 22–3102 (1989 Repl.); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.36 (4th ed. 1993).[6] For instance, in a

---

**4.** The application of the directed verdict test to the issue of probable cause results in a curious double perspective that can make this case difficult to apprehend conceptually. On one hand, probable cause must be assessed in terms of the information known to the officers. Indeed, as we have indicated, the substantive standard for determining probable cause—on which the jury was instructed—focuses upon the reasonable, good faith *belief* of the officers. But, on the other hand, because the District is claiming that it was entitled to a directed verdict, the evidence of that belief and its reasonableness, given the information available to the officers, must be assessed in the light most favorable to Murphy.

**5.** The jury awarded $260,000 in damages after finding for Murphy on both his false arrest and his assault and battery claims. The District's appeal of the latter is contingent on its prevailing on the false arrest claim. *See supra* note 2. Thus, our affirmance as to false arrest effectively ends the case.

**6.** D.C.Code § 22–3102 provides as follows:

Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property,

or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor

. . . .

Where a charge of unlawful entry involves remaining on the premises without authority, the essential elements of the offense are:

1. That the defendant was present in a public or private dwelling, building, or other property, or a part of such dwelling, building, or other property;

2. That the defendant was directed to leave the property by the lawful occupant or person lawfully in charge of the property;

3. That at the time s/he was directed to leave the property, the defendant was without lawful authority to remain there; and

4. That upon being directed to leave the property, the defendant refused to leave.

CRIMINAL JURY INSTRUCTIONS, No. 4.36(B). This definition does not differ in any material respect from the earlier definition that appeared in

case somewhat similar to this, we held that a man who refused to leave his girlfriend's apartment after she clearly had ordered him to do so could be convicted for unlawful entry. *See (Patrick) Jackson v. United States,* 357 A.2d 409 (D.C.1976). While recognizing that Jackson "entered and remained in the apartment lawfully when he had [his girlfriend's] permission to do so," we also said that "when it became clear to him, as he testified it had, that she was ordering him to leave, any grounds for a bona fide belief in his right to remain lapsed." *Id.* at 411.

The District analogizes this case to *(Patrick) Jackson.* The District asserts in its brief that the officers clearly had probable cause to arrest Murphy because "[t]he undisputed testimony of Ms. Young and the officers was that Ms. Young asked plaintiff to leave and that he refused." Appellant's Brief at 9. But the record belies this assertion. For here, in contrast with *(Patrick) Jackson,* Murphy never acknowledged that he had been ordered to leave the apartment.

Certainly Mary Young testified that she had told Murphy that he should leave because the police were coming. But Murphy denied that Mary Young had told him why she had called the police. He also asserted that he would have left the apartment if she had asked him to do so. In any event, whatever occurred between Murphy and Mary Young before the police officers arrived is relevant only insofar as it was communicated to the officers, since our concern is whether the officers had a reasonable, good faith belief that they were acting lawfully in making the arrest, not whether Murphy had in fact committed unlawful entry. Consequently, we must focus on what Mary Young told the police officers had happened before their arrival.

When asked at trial what she had told the police, Mary Young responded, "I told them I wanted for Paul Murphy to leave because I was afraid that he might start fighting on me again[;] I want him out of

my house." Officer McCoy testified that Mary Young had said "that her boyfriend had been fighting her previously and she wanted him to leave." Similarly, Officer Young stated that Mary Young had said she and Murphy "had been arguing and arguing, and that he had hit her a few times." Officer Young testified further as follows: "Ms. Young was then asked, 'Did you want Mr. Murphy to leave?' She stated yeah. I then asked Murphy to leave." Clearly, Mary Young told the police officers that she "wanted" Murphy to leave. But there is no evidence that she ever told the officers that she actually *had asked* Murphy to leave and that he had refused.

If Mary Young or the officers had testified that she told them she had asked Murphy to leave and he had refused, this would be a different case. Such testimony would have been uncontroverted—because Murphy testified that he had not heard the conversation between Mary Young and the police officers—and thus would have supplied undisputed evidence requiring a conclusion, as a matter of law, that the officers had a reasonable, good faith belief in the lawfulness of the arrest. But that was not the testimony given at trial.

Of course, the police officers might also have had probable cause to arrest Murphy if they had personally asked him to leave and he had refused. *See Hemmati v. United States,* 564 A.2d 739, 742 (D.C. 1989) (defendant had no right to remain in Senator's office after being told, at direction of person lawfully in charge, to leave). Mary Young and both officers testified that this is precisely what happened. But the evidence on this issue was disputed at trial, because Murphy denied that the officers had said anything at all to him before they forced him out of the apartment.

In sum, (1) there was no evidence that Mary Young told the officers that she had asked Murphy to leave, and (2) Murphy disputed the officers' claims that they had asked him to leave. Thus, the record does

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.44 (3d ed. 1978), which was in effect at the time of trial.

not exclude the possibility that the police seized Murphy without knowing whether Mary Young had asked him to leave and without asking him to do so themselves. If that was indeed the case, then the police had no ground for believing that Murphy was breaking the law. Consequently, viewing the evidence in the light most favorable to Murphy, we cannot say as a matter of law that the police officers had probable cause to arrest Murphy for unlawful entry or a reasonable good faith belief that they were acting lawfully in doing so. *See supra* note 4.

One may well question the credibility of Murphy's assertion that Mary Young never told him why the police were coming and that he never asked. One could also infer, from the evidence that Mary Young told the officers she wanted Murphy out of the apartment, that the officers had a good faith, reasonable basis for believing that Mary Young had already asked Murphy to leave and that he had refused. Finally, one might decide that the testimony of Mary Young and both officers outweighed Murphy's assertions that no one ever asked him to leave the apartment. But these are precisely the kinds of determinations that must be left for the jury. Certainly the District's evidence at trial could have supported a determination by the jury that the officers had probable cause to arrest Murphy, or at least a reasonable good faith belief that they were acting lawfully in doing so. But, as the trial court correctly ruled, the evidence was too equivocal to support a judicial determination that no reasonable juror could find otherwise.

### IV.

We turn now to the District's claim that the police officers had probable cause to arrest Murphy for assault. After review of the record, we conclude that we should not consider this argument because the District failed to present it to the trial court.

When counsel for the District first moved for a directed verdict on Murphy's false arrest and imprisonment claims, he made the following argument to the court:

[F]alse arrest, as the Court is aware, only exists if there is not sufficient justification for the arrest. Mr. Murphy himself has testified that he did not have a key to the apartment in which he was living, he was not on the lease for the apartment in which he was living at the time of the incident and the no-paper sheet submitted into evidence by the Plaintiff indicates that he was arrested for both unauthorized entry and simple assault. Under those circumstances, although we have not heard the testimony of the individual officers, I submit to the Court by implication—

At this point the trial judge interrupted counsel and denied the motion. Counsel did not attempt to make any further argument at that time. Later, after presenting its case, the District renewed the motion for directed verdict, but it made no further argument with respect to the false arrest claim. Finally, in its written posttrial motion for judgment notwithstanding the verdict, the District again focused only on the argument that the officers had probable cause to arrest Murphy for unlawful entry. In short, at no time at trial or in its posttrial motion did the District ever advance the argument that it was entitled to a directed verdict because the police officers had probable cause to arrest Murphy for assault.

We follow the basic principle that, absent a manifest miscarriage of justice, appellate courts need not, and usually will not, reverse a trial court ruling in a civil case on the basis of arguments made for the first time on appeal. *See, e.g., Jones v. Howard Univ.,* 574 A.2d 1343, 1346 (D.C.1990); *Henderson,* 493 A.2d at 995; *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967). No miscarriage of justice will result in this case from our refusal to consider the District's belated argument. While Murphy himself acknowledged that Mary Young had told the officers that he had hit her, it is not clear whether the assault the arresting officers had in mind when they arrested Murphy was an attack on Mary Young or on themselves. If they arrested Murphy for an

alleged assault on them, then we can hardly say that the evidence on that point was undisputed. In short, the evidence on this issue in the trial court was too murky for us to presume to overrule the trial court on the basis of an argument it never was asked to consider.

Accordingly, for the reasons given above, the judgment of the trial court is

*Affirmed.*