DISTRICT OF COLUMBIA, Appellant,

v.

Paul MURPHY, Appellee.

No. 92–CV–283.

District of Columbia Court of Appeals.

Dec. 29, 1993.

---

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellant.

Samuel M. Shapiro, with whom David C. Merkin, was on the brief, for appellee.

Before FERREN, FARRELL and KING, Associate Judges.

FERREN, Associate Judge:

The District, petitioning for rehearing, contends that we erred in affirming the judgment on the jury's verdict awarding Murphy $260,000 in damages on his claim for false arrest. *See District of Columbia v. Murphy,* 631 A.2d 34 (D.C.1993).

## I.

The District argues that we erroneously based our decision exclusively upon our conclusions from the record that (1) the jury reasonably could have found that the police officer defendants lacked a reasonable, good faith belief that their conduct was lawful, and that (2) the officers accordingly lacked a defense to Murphy's false arrest claim. In making this argument the District notes, first, that a police officer's good faith, reasonable belief in the lawfulness of his or her conduct—substantially a subjective test—is not the only defense to a false arrest claim. According to the District, an objective basis for a finding of probable cause will also supply a defense to false arrest, even though a police officer may not be aware of all the facts objectively justifying probable cause. The District then argues that the record shows, without contradiction, that Mary Young, the lawful occupant of the apartment, had asked Murphy to leave before the police came, and that Murphy had refused to leave. These facts, according to the District, established the elements of the crime of unlawful entry and thus, as a matter of law, established an objective basis for a finding of probable cause that served as a complete defense.

The District is correct on the law, but its argument fails. As noted in our opinion, there was a factual dispute of record as to whether Mary Young had told the arresting officers she had asked Murphy to leave; thus, there was a jury question as to whether the officers had a reasonable, good faith belief that their conduct, in forcing Murphy out of the apartment, was lawful. *See Murphy,* 631 A.2d at 38–39. Similarly, as also indicated in our opinion, *see id.* at 38—and as elaborated below—there is a factual dispute as to whether, objectively speaking, the police officer defendants had probable cause to arrest for unlawful entry; *i.e.,* there is a dispute as to whether Young had asked Murphy to leave before the police arrived.

## II.

Before examining the facts of record, we believe it is important to note why, in the division's opinion, we analyzed probable cause primarily by reference to the "reasonable, good faith belief" standard and not, in addition, by reference to the objective standard the District emphasizes now.

At trial, the court instructed the jury with respect to false arrest as follows:

Now, there's a claim before you for consideration of false arrest and false imprisonment. Arrest occurs when a person is restrained or detained by one or more other persons against his will. It may occur by actual physical force. Examples of such force include holding or handcuffing a person or locking a room. An arrest may also occur by the use of threats of force against another person. If a person is detained or restrained for any length of time by force or by threat, then he is arrested.

An arrest is called a false arrest if there is not sufficient legal justification for the arrest. *A police officer has legal justification to arrest a person when he reasonably believes, in good faith, that the person has committed, is committing or is about to commit a crime.*

*Thus, in this case, if you find that the officers had reason to believe and honestly did believe that the Plaintiff had committed, or was committing or was about to commit the crime of unlawful entry or assault, then the officers would have suffi-*

*cient legal justification to arrest the Plaintiff.*

Now, an unlawful entry is the entry upon premises knowing that you don't have the permission to do so, or remaining on premises after you have been told by the person lawfully in charge of them that you should no longer remain there.

You are instructed that the amount of force that a police officer may use to arrest a person, and to maintain the person so arrested, is that force which is reasonably necessary. I further advise [you that] it is the law in this city that a person being arrested may not resist a police officer, even when there is no sufficient legal justification for the arrest. However, an officer is not allowed to use any force beyond that reasonably necessary to accomplish his or her lawful purpose.

Therefore, if you find that the Defendant's employees, the police officers, used greater force than was reasonably necessary in the circumstances of this case, then you must find that the Defendant is liable for any injuries or damage suffered by the Plaintiff as a result of such excessive force.

Now, if you do find that the Plaintiff was falsely arrested, then he will be entitled to an award of enough money to compensate him for any mental suffering, including fright, shame, mortification, from the indignity and disgrace that resulted from such a false arrest. If falsely arrested or imprisoned, at the very least, he will be entitled to an award of nominal damages, that is, a trivial sum such as a dollar, even if you find that there was no actual injury or damages suffered.

Thereafter, the court asked counsel with respect to instructions: "Any objections as given?" The District's counsel replied: "No, Your Honor.... Okay."

The case, therefore, was submitted to the jury, without objection, exclusively on the theory that the District, on petition for rehearing, faults this court for applying: whether the police officers had "legal justification to arrest a person when he [or she] reasonably believes, in good faith, that the person has committed, is committing or is about to commit a crime." Moreover, no-

where in the District's motions for directed verdict, judgment notwithstanding the verdict, or for a new trial did the District challenge as an incomplete statement of the law the subjective probable cause theory the court conveyed to the jury.

On appeal—faithful to the theory on which it defended the case at trial—the District opened the argument in its brief by reciting the subjective test: "It is well settled that an officer is privileged to arrest and detain a person if he has 'a good faith reasonable belief in the validity of arrest and detention.'" Appellant's Brief at 8 (citing six cases). Again, in its reply brief, the District emphasized: "the question is not whether there was evidence that he had a right to remain in the apartment, but whether the officers had a good-faith, reasonable belief that he had [no] right to remain." Appellant's Reply Brief at 3.

Under these circumstances, our opinion confined our analysis of the record to the theory of the case—the "reasonable, good faith belief" theory—the District advanced at trial. *See District of Columbia v. Mitchell,* 533 A.2d 629, 636–37, 645–46 (D.C.1987) (District's argument on appeal that trial court instructions were too narrow was "not preserved" because not presented to trial court, and no apparent miscarriage of justice occurred). Accordingly, we are asked to consider an argument the District makes for the first time on petition for rehearing.

### III.

■■■ Because of the public importance of the issue the District identifies, we address it in detail. We agree with the District—and stated in our opinion—that a "police officer may justify an arrest by showing that he or she had probable cause, in the constitutional sense, to make the arrest." *Murphy,* 631 A.2d at 36 (citing *Welch v. District of Columbia,* 578 A.2d 175, 176 (D.C.1990)). In other words, if a police officer has so-called constitutional probable cause to arrest, determined by reference to the objective standard used to determine probable cause in a criminal proceeding, *see Wade v. District of Columbia,* 310 A.2d 857, 863 (D.C.1973) (en banc),

the arrest will be lawful and the officer accordingly will have a complete defense to a false arrest claim. *See Welch,* 578 A.2d at 176; *Henderson v. District of Columbia,* 493 A.2d 982, 994 (D.C.1985). This test, therefore, is dependent entirely on the facts as they actually occurred—*i.e.,* on the objective facts—without regard to what a police officer may have actually, even reasonably, perceived the facts to be.

The law of this jurisdiction, however—derived from the Supreme Court's decision in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *see Henderson,* 493 A.2d at 994—also allows a lesser, partially subjective test to support a police officer's defense to a false arrest claim: "it will suffice if the officer can demonstrate that (1) he or she 'believed, in good faith, that his [or her] conduct was lawful,' and (2) this 'belief was reasonable.' " *Murphy,* 631 A.2d at 36 (citations omitted). As the petition for rehearing recognized, we affirmed the judgment in Murphy's favor after discussing the facts almost exclusively with reference to this lesser, usually easier-to-meet test. As Part II above makes clear, however, we did so because that is the test—and the only test—on which the District relied at trial. The District did not ask in the alternative for instructions on the objective, usually harder-to-meet, probable cause standard.

■ In any event, the question now presented by the rehearing petition is whether the defendant officers had probable cause in the objective, constitutional (criminal law) sense, even though they did not subjectively have a reasonable, good faith belief that their actions were lawful.

We stated in our opinion:

1. Murphy testified as follows:

> Q  Did she tell you why the police were coming?
> A  No.
> Q  Did you ask?
> A  No.
>
>       *   *   *   *   *   *
>
> Q  Okay.  Did you ever ask Ms. Young for a key to the apartment because you lived there for about two years?
> A  No.

Certainly Mary Young testified that she had told Murphy that he should leave because the police were coming.  But Murphy denied that Mary Young had told him why she had called the police.  He also asserted that he would have left the apartment if she had asked him to do so.[1] *Murphy,* 631 A.2d at 38.  We understood the record—and still do—as creating questions of fact as to whether Mary Young had asked Murphy to leave and whether Murphy had refused to do so.  See *supra* note 1.  Therefore, neither question—whether there was probable cause in the constitutional sense, or whether the officers had a good faith, reasonable belief that they were acting lawfully—can be answered as a matter of law in the District's favor.  *See Henderson,* 493 A.2d at 994.  The first issue, as well as the second, would have been for the jury if the District had presented it through properly requested instructions.

The District contends that Murphy, in responding that Young could have "ask[ed] me to leave," see *supra* note 1, was referring to a time period earlier in the day than the period for which we are assessing the existence of probable cause, and that Murphy, therefore, did not effectively contradict Young's testimony that she had asked him to leave.  It would follow from this uncontradicted testimony that the officers had an objective probable cause defense.  Although the District's argument is not far-fetched, its reading of the record is not conclusively correct as a matter of law.  We believe Murphy's testimony, see *supra* note 1, could reasonably be understood to mean that Young had never asked Murphy to leave.

In sum, we cannot conclude as a matter of law that the defendant officers had probable

> Q  Okay.  And so, when you came back to the apartment from seeing your mother that Sunday afternoon, she let you into the apartment?
> A  Yes.
> Q  Okay.  And she could have just locked you out because you didn't have a key?
> A  I guess.  I knocked on the door.
> Q  Okay, but I'm saying, because you didn't have a key, if she had wanted to keep you out, all she had to do was lock the door and not answer to let you in, is that right?
> A  *Or ask me to leave.*
> (Emphasis added).

cause in the constitutional sense to arrest Murphy, any more than we could conclude as a matter of law that they had a good faith, reasonable belief in the lawfulness of their actions. We conclude, accordingly, that on the District's petition for rehearing this court's order shall be reaffirmed.

*So ordered.*