DISTRICT OF COLUMBIA, et al.,
Appellants/Cross–Appellees,

v.

Alton F. MINOR, Appellee/Cross–
Appellant.

Nos. 95–CV–400, 95–CV–948, 95–
CV–949 and 95–CV–1244.

District of Columbia Court of Appeals.

Argued Oct. 22, 1998.
Decided Sept. 9, 1999.

 

infliction of emotional distress and under 42 U.S.C. § 1983 for unlawful arrest in violation of Minor's Fourth Amendment rights.[1] The jury also found an unknown police officer liable for assault and battery based on the strip-search of Minor. The jury awarded Minor undifferentiated lump-sum compensatory damages of $20,000 and punitive damages of $10,000.[2]

Judgment was entered that Minor recover of the District and Kelsey, "jointly and severally," compensatory damages in the amount found by the jury and the punitive damages against Kelsey alone. On appeal, the District and Officer Kelsey ("District") argue only that the evidence was insufficient for the jury to find in Minor's favor on any of the claims.[3] In what appears to have been a protective cross-appeal, Minor challenges the directed verdict for the District on the issue of municipal liability under 42 U.S.C. § 1983. We affirm.

Mary Connelly, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, Edward E. Schwab and Martin B. White, Assistant Corporation Counsel, were on the brief, for appellants/cross-appellees.

Gregory C. Mitchell, Washington, DC, with whom Bruce W. Stein, was on the brief, for appellee/cross-appellant.

Before WAGNER, Chief Judge, STEADMAN, Associate Judge, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

This is a civil action for damages brought against the District of Columbia, Officer John Kelsey, and other "unknown metropolitan police officers" stemming from a detention and a public partial strip-search of Alton Minor. Prior to jury deliberations, the trial court granted a directed verdict for the District of Columbia on the issue of municipal liability under 42 U.S.C. § 1983 (Supp. II 1996). A jury found Officer Kelsey liable under common-law claims of false arrest and intentional

## I. Facts
### A.

The facts of this case were hotly contested at trial. Minor's version of what happened, corroborated in part by three other witnesses, was as follows. Around 8:00 p.m. on May 19, 1992, Minor was sitting on a fence rail in front of his apartment house at the corner of 7th and O Streets, N.W., in Washington, D.C. He wore black jeans and a black shirt. An acquaintance, Steve Carney, came out of a building and walked past Minor on his way to the O Street Market. At that point, a police car came by but neither Carney nor Minor reacted in any way. Officers Kelsey and Fontz

---

1. The jury found for Officer Kelsey on a section 1983 excessive use of force claim and on a common law assault and battery claim.

2. The trial court awarded Minor $72,489.14 for attorneys fees and $4950.85 for costs. The record before us is incomplete and thus unclear as to the basis for the award of attorneys' fees or precisely against whom they were awarded. Although an appeal was filed from these awards, they are not separately challenged by appellants, nor is any argument made that these awards affect the disposition of the issues actually addressed by the parties' briefs on appeal. We therefore do not here consider further these awards of costs and attorneys fees or their effect.

3. More precisely put, the argument is that the trial court erred in failing to grant the District's motions for judgment as a matter of law.

jumped out of the car, and Officer Fontz grabbed Carney and wrestled him to the ground. Kelsey told Minor "You, bring your black motherfucking ass over here." Minor said he did not throw anything or place his hands in his pocket, and that before he could come down off the fence Kelsey grabbed him from behind and pulled him down to the ground, causing his back and head to strike the ground and suffer injury. Minor was handcuffed and frisked.

Additional squad cars arrived and Minor was placed inside one of them. After about ten minutes, Minor was taken out of the car, his pockets were searched, and officers found a small penknife. Ten minutes later, he was again removed from the car and an unidentified police officer pulled Minor's trousers down to his knees and searched the rim of his underwear. At the time of the search, a crowd including a number of females had gathered and saw Minor with his pants down and underwear exposed. No contraband was found in either search. About ten minutes later, Minor was released. Minor suffered from a swollen lower and upper back and a knot on the head from being pulled down to the ground off the fence; he received emergency care, additional medical care for six months, and therapy. Minor further testified that he was embarrassed and humiliated by the way that he was publicly searched.

Plaintiff's eyewitnesses Denise Kimlaw and Leroy Mills corroborated Minor's testimony that Steve Carney did not try to run when the officers arrived at the scene and that Minor made no attempt to leave the rail before Officer Kelsey grabbed him from behind and pulled him to the ground. Kimlaw, who witnessed the incident at a distance of 15 to 20 feet, testified that she did not see Minor put his hands in his pockets as the officer approached, nor did she see Minor flip anything in the air after Kelsey grabbed him. Mills stated that he had a clear view of Minor's hands, that Minor did not put his hands in his pockets, and that Minor did not throw any object out of his hands once he was grabbed by the officer. Both stated that there was no grass growing in the area at the time of the incident.

**B.**

The District's primary witness was Officer Kelsey, who testified to the following version of events: Kelsey and his partner Officer Fontz received a radio report at approximately 7:45 p.m. stating that two individuals located at the corner of 7th and O Streets, N.W. were selling or holding narcotics. Kelsey testified that the report described the individuals in question as black males, about five feet eleven, in their twenties, wearing black shirts and black pants. They drove the squad car to 7th and O Streets, arriving within two or three minutes, and observed two individuals fitting the report description at the corner in question. Kelsey saw no exchange between Minor and Carney. As soon as the officers exited the vehicle, Carney started running. Kelsey walked toward Minor and told him "in a very boisterous way" not to move.[4] Kelsey testified that as he approached Minor, Minor made a sudden movement toward his pocket and, concerned about destruction of evidence or a weapon, Kelsey grabbed Minor in a bear hug and pulled him off the fence. Once he had grabbed Minor, a small object came out of Minor's hand and went up in the air, although Kelsey could not see where it landed because of the grass in the area. Kelsey said he never got a chance to look where the object had fallen because an aggressive crowd had formed and he feared for personal safety.

Kelsey gave Minor a light pat-down search, found no weapons or contraband, and put him in a scout car. Kelsey testi-

---

4. Neither in direct nor on cross was Kelsey asked about his use of the words attributed to him by Minor. .

fied that he did not search Minor after that. Kelsey's deposition testimony was read in court to contradict this statement. At his deposition, Kelsey testified that he had conducted a public search of Minor in which he unbuckled and dropped Minor's pants and looked in the waistband of Minor's underwear to see if he was hiding narcotics. No drugs, no weapons, and no large sums of money were found on Minor. At trial Kelsey said that he remembered that it was Carney, not Minor, that he had searched in this manner.

Kelsey stated that, based on the radio tip regarding the two individuals selling drugs, he only had cause to do an investigatory stop of Minor. He subsequently "was arresting Mr. Minor because of what I believed were narcotics that he flipped out of his hand." Although he testified that he had arrested Minor, in the report he filed on the incident Kelsey classified the detention as a "stop and frisk," rather than an arrest, because Minor had been released and had never been brought in. This report did not mention the alleged flipping of a small package by Minor that Kelsey suspected to be drugs.

Officer Angelo Hicks, one of the police officers with the Narcotics and Special Investigation Division who was involved in providing the tip to Kelsey, also testified. Officer Hicks testified that around 7:30 or 8:00 p.m. on May 19, 1992, he and his partner, Sandy Austin, were in the vicinity of 7th and O Streets and received a tip from a paid informant who had "given information concerning two subjects who were possibly holding narcotics"[5] and that the informant had given a description of those subjects in the area of 7th and O Streets.[6] That information was relayed to other police units, although Hicks did not know whether he or his partner called in the tip. Hicks did not testify as to the content of the physical description.[7] Hicks, who was still in the vicinity of 7th and O Streets, saw the uniformed units arrive and the intersection quickly filled with 50 to 100 people who were loud and boisterous. Hicks personally saw the subjects but could not recall what they were doing or whether they spoke to one another, and he did not see them exchange anything. Hicks could not testify as to the informant's reliability because his partner was the one dealing with the informant.

Expert witnesses for both the plaintiff[8] and the defense[9] testified that, based on a radio tip like that described by Officer Kelsey, an officer would only have reasonable suspicion to stop an individual and not probable cause to arrest under what they termed national standards. Both also agreed that if the facts were as testified to by Kelsey, i.e., that one suspect ran and the other flipped a small packet from his hands, this could raise the level of suspicion to that of probable cause to arrest. Klotz further testified that under national standards, an officer should state explicitly in a stop and frisk report such as Kelsey filled out all the relevant facts including, for example, that the suspect threw an object that matched, in the officer's experience, drug packaging.[10]

---

**5.** On cross-examination, Hicks stated that the informant provided information concerning subjects "who were selling narcotics in the area and possibly holding narcotics at the time."

**6.** Hicks admitted that when he was deposed he said that he had no recollection of the events to which he was now testifying.

**7.** The radio tip was broadcast on an unrecorded line so no tape of the radio run was put into evidence, and the only testimony regarding the description in the tip was that of Officer Kelsey.

**8.** Plaintiff's expert, Robert Klotz, is a former Deputy Chief of Police of the Washington, D.C. Metropolitan Police.

**9.** Defendant's expert, Jerry B. Wilson, is the former Chief of the Washington, D.C. Metropolitan Police.

**10.** Klotz also testified for the plaintiff regarding functioning of the Civilian Complaint Review Board (CCRB), the District's primary method for disciplining officers for citizen complaints including excessive force and unlawful arrest at the time of the incident.

## II. Procedural History

Minor filed suit against Officer Kelsey, the District of Columbia, and unknown metropolitan police officers alleging numerous violations of Minor's constitutional and common law rights. At the close of trial, the court granted a directed verdict for the District of Columbia on municipal liability for the constitutional claims brought under 42 U.S.C. § 1983, concluding that there was no evidence establishing a causal link between any policy or practice of the District and any violation of Minor's constitutional rights by the police officers. The jury verdict was as follows: (1) Officer Kelsey was found liable under 42 U.S.C. § 1983 for violating Minor's Fourth Amendment right to be free from unreasonable seizure of his person;[11] (2) Officer Kelsey was found liable on common law claims of false arrest and intentional infliction of emotional distress; (3) an unknown police officer was found liable for assault and battery based on the search of Minor's person; and (4) the jury found in Officer Kelsey's favor on a section 1983 excessive force claim and on a common law assault and battery claim.[12] In the special interrogatory on the jury verdict form, the jury answered "no" to the question: "The jury finds that at the time the Plaintiff was searched by the unknown officers, he was legally under arrest."[13]

The jury awarded Minor $20,000 in compensatory damages and $10,000 in punitive damages. The verdict form did not separate out damages based on the different theories of liability nor did it designate against whom the damages were awarded; that is, the verdict form did not list compensatory damages separately for Officer Kelsey, the unknown officer, and the District of Columbia.[14] The formal judgment entered that same day by the clerk of the court pursuant to Super. Ct. Civ. R. 58 orders that Minor recover of the District and Kelsey, "jointly and severally," compensatory damages in the amount found by the jury and the punitive damages against Kelsey alone, both with interest and costs.[15] Nothing is said about the unknown officer against whom the jury found liability for "assault and battery (search)." Post-trial motions by the District and Officer Kelsey for judgment as a matter of law or for a new trial were denied.

## III. Analysis

The District argues that the trial court should have granted its motions for

11. The verdict form labels the constitutional violation as "unlawful arrest." No separate constitutional claim was listed against an unknown police officer based on a search.

12. The assault and battery claim against Kelsey appears to have been based on Kelsey's "bear hug" of Minor, pulling him off the fence rail to the ground. The verdict form simply asked for the jury's verdict on the "assault and battery" claim against Kelsey, but specified that the claim against the unknown officer was "assault and battery (search)."

13. From the discussions about the verdict form and the instructions of the trial court, it appears that this special interrogatory was given at the request of the government for the purpose of trying to determine whether the jury found that the unknown police officer reasonably believed that Mr. Minor was under arrest when he searched him. (An answer in the affirmative would be the basis for an argument that the search would be privileged in that context.) The transcript furnished on appeal does not contain the full text of the entire instructions given to the jury. The record does contain a number of what are termed "final jury instructions," but nothing therein mentions the verdict form. No issue is raised on appeal about the correctness of the instructions or of the verdict form.

14. The form lists punitive damages separately against Officer Kelsey alone.

15. No challenge is raised on appeal to the form of the judgment as such. The District's liability was based on admitted liability on the ground of respondeat superior for any common-law claims for which the jury might find liability against the officers. No respondeat superior liability could be imposed against the District for Kelsey's liability under § 1983. *See, e.g., District of Columbia v. Evans,* 644 A.2d 1008, 1018 (D.C.1994) (citations omitted).

judgment as a matter of law on the ground that the evidence was insufficient to uphold findings of liability on every claim for which the jury found for the plaintiff. The standard of review on appeal of a denial of a motion for directed verdict or judgment notwithstanding the verdict is that the denial "must be affirmed unless the evidence, viewed in the light most favorable to the non-movant, would permit reasonable persons to return a verdict only in favor of the moving party." *See, e.g., Bernstein v. Fernandez,* 649 A.2d 1064, 1070 (D.C.1991) (citations omitted).

### A. Section 1983 claim

We begin with an examination of the sufficiency of evidence for the constitutional violation, because in the circumstances of this case insufficiency on that claim will effectively negate the common-laws false arrest claim and, conversely, sufficiency on the constitutional claim supports the common-law false arrest claim as well. The District in its brief to us presents the relevant issues with respect to these two claims to be the following: 1) Did Kelsey have probable cause to arrest Minor (relevant to both claims). If not, 2) Was Kelsey protected by qualified immunity with respect to the § 1983 claim; and 3) Was Kelsey protected by the "good faith reasonable belief" privilege with respect to the false arrest claim. We address only the issues as thus presented to us.[16]

---

**16.** In particular, we do not consider whether the doctrine of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), could apply to any portion of this litigation. Although the doctrine of that case was included in the instructions to the jury, no argument with respect thereto is made on appeal. The case is not cited in the District's brief nor is its lesser standard of "articulable suspicion" for a temporary detention of an individual on less than probable cause.

**17.** The definition of probable cause actually given to the jury was subjective as well as objective: "Probable cause is defined as a good faith and reasonable belief in the validity of the arrest." Certainly there was sufficient

**1.** *Probable Cause to Arrest:* "An officer has probable cause to arrest an individual when he or she has reasonably trustworthy information at the moment of arrest 'sufficient to warrant a reasonably prudent [person] in believing that the [suspect has] committed or [is] committing an offense.'" *Brown v. United States,* 590 A.2d 1008, 1012 (D.C.1991) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)) (citation omitted).[17] To establish probable cause here, the District relies upon the informer's tip and the actions of Carney and Minor upon the confrontation by Kelsey. The fundamental problem with the District's position is that it insufficiently recognizes the jury's role as the finder of the facts upon which the probable cause determination is made.[18]

It is of course true that probable cause may be based on an informant's tip if the "totality-of-the-circumstances" provides reason to believe that the tip is sufficiently reliable to justify the arrest. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, in this case, the officer who was the main contact with the informant did not testify. Neither Officer Hicks nor Officer Kelsey could attest to the informant's credibility and reliability. Even the details of what was at best a rather generalized radio run were in doubt. The only information as to what the radio run actually contained came from Kelsey himself. Given that Kelsey's credibility was substantially undermined by, e.g., inconsisten-

---

evidence here for the jury to conclude that Officer Kelsey was not acting in good faith. However, even under the purely objective standard, the jury could find a lack of probable cause, as discussed in the text.

**18.** No issue is raised in this appeal as to the propriety of the submission of the probable cause issue to the jury or its role as the determiner of the underlying facts relevant to that issue, which were clearly in dispute. Likewise, no issue is raised as to the use of experts to define the meaning of probable cause nor its application to the facts of a particular case, as done here.

cies between his trial testimony and his deposition testimony, the jury could find these statements to be self-serving and not to have been believed. Kelsey himself as well as both experts indicated that they thought the radio run was insufficient to arrest. We do not think that the record here compelled a jury conclusion that Officer Kelsey had probable cause to arrest Minor on the basis of the radio description alone.

■ We next examine whether the conduct of Carney and Minor after Officer Kelsey and his partner arrived on the scene was sufficient, when combined with the radio tip, to constitute probable cause. If the jury were to believe Officer Kelsey's version of events, that Steve Carney ran when the officers arrived on the scene and that Minor threw a small packet that looked like narcotics as Kelsey pulled him off the fence, that might very well raise the level of suspicion sufficiently to provide probable cause for the arrest. However, the facts regarding what occurred after the officers arrived on the scene were hotly disputed. As already indicated, Minor himself and several other witnesses flatly contradicted this testimony. The jury also heard evidence that Kelsey did not report the alleged tossing of narcotics on the incident report he filed at the time. Plainly, the jury could conclude that the actual conduct of Carney and Minor did nothing to augment the otherwise insufficient probable cause inquiry.

■ 2. *Qualified immunity:* Appellants contend that, even if there was no actual probable cause to arrest Minor, Officer Kelsey is nonetheless immune from suit under 42 U.S.C. § 1983 based on the doctrine of qualified immunity. In suits for unlawful arrest brought under § 1983, qualified immunity shields police officers from liability if " 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officer possessed.' " *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Law enforcement officers who " 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant,* 502 U.S. at 227, 112 S.Ct. 534 (quoting *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034). This court has most recently articulated the qualified immunity standard thus, in the context of § 1983 claim for excessive use of force: "[T]he law now ... is that the official must intentionally, or with reckless disregard, violate a clearly established right before a § 1983 claim is justified." *District of Columbia v. Evans, supra* note 15, 644 A.2d at 1017.[19]

The District argues that the facts of this case are similar enough to *Turner v. United States,* 588 A.2d 280 (D.C.1991), where this court found probable cause for arrest, that a reasonable police officer could have concluded that the present case fell within the established law of that case.[20] The

**19.** The instruction given to the jury on qualified immunity stated: "Officer Kelsey is shielded from liability for civil damages as long as he did not intentionally, or with reckless disregard, violate clearly established statutory or constitutional rights of which a reasonably competent police officer would have known on May 19, 1992." No challenge is raised on appeal to the submission of the qualified immunity issue to the jury nor to the instructions given with respect thereto. *Cf. id.* at 1014 n. 4; MICHAEL AVERY ET AL., POLICE MISCONDUCT: LAW AND LITIGATION § 3:20, at 3–69 (3rd ed.1998). We need not here further explore the complexities of the qualified immunity doctrine. *See, e.g., Crawford–El v. Brit-*

*ton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

**20.** In *Turner, supra,* a police officer had received a call from a paid police informant stating that "a black male, wearing a burgundy sweatshirt jacket, burgundy sweatpants, and a black Coca–Cola cap turned backwards, was holding and selling cocaine in front of 1424 Chapin Street, N.W." 588 A.2d at 280. The informant had previously provided reliable tips on ten other occasions, resulting in three "good" search warrants and several arrests. The informant also called a second time to report that the subject was in the

District also argues that for purposes of immunity analysis, Officer Kelsey was entitled to rely on the information in the tip supplied to him by fellow officers without independently having to verify its reliability. *See, e.g., Rogers v. Powell,* 120 F.3d 446, 454–55 (3rd Cir.1997); 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 3.5(b), at 255 (3d ed.1996).

Again, a basic problem with the District's argument is that it postulates belief in the testimony presented by the District, which the jury was not compelled to accept. Furthermore, the jury heard the testimony of both defense and plaintiff's experts that under national standards there was no probable cause to arrest based on a radio tip alone like that described by Officer Kelsey. As stated above, Officer Kelsey's own testimony indicated that he did not believe that he had probable cause to arrest Minor based on the radio tip alone, but only after he in addition allegedly saw Minor flip away an object whose appearance was consistent with drug packaging. On the record here, we are quite unable to conclude that the jury was compelled to find that qualified immunity protected Kelsey from liability under § 1983, or that we could do so as a matter of law on the disputed facts of this case.

### B. Common-law False Arrest

 The District next asserts that there was insufficient evidence for the jury to conclude that Officer Kelsey was liable for common law false arrest. To avoid liability for common law false arrest, a police officer may justify an arrest by demonstrating either (1) that he or she had probable cause to make the arrest or (2) that he or she believed in good faith that the arrest was lawful and that this belief was reasonable. *District of Columbia v. Murphy,* 631 A.2d 34, 36 (D.C.1993) (citations omitted). This standard resem-

bles the section 1983 probable cause and qualified immunity standards discussed above (with the added clear articulation of the requirement of good faith), and the District's argument fails for essentially the same reasons already set forth. In any event, on this record, the jury was not required to credit Kelsey's good faith as mandated under the second standard of justification in *Murphy.*

### C. Common Law Assault/Battery

 The District argues next that there is insufficient evidence to support the assault and battery verdict against the unknown officer based on the public search of Minor because (1) it was a valid search incident to a valid arrest based on probable cause and (2) even if there was no probable cause for the arrest in the constitutional sense, the unknown officer was entitled to assume that if Minor was in police custody, he had been properly arrested, *see, e.g., Scott v. District of Columbia,* 322 U.S.App.D.C. 75, 101 F.3d 748, 754–55 (1996), *cert. denied,* 520 U.S. 1231, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997), and thus validly search Minor incident to such arrest by fellow officers. Because we have already determined that the jury could reasonably have concluded that Kelsey arrested Minor without probable cause, the District's first argument fails.

 We conclude that the District's second argument fails as well. Although Minor brought the assault and battery claim against an unknown police officer, there was evidence presented at trial from which the jury could have concluded that this "unknown officer" was in fact Officer Kelsey. Kelsey testified at trial that he had conducted only a pat-down search of Minor prior to placing him in the police car for the first time and denied having conducted the public strip-search of Minor upon which this charge was based. However, in cross-examination, plaintiff's coun-

---

same location but had removed this jacket. Upon arriving at the location, officers found an individual matching the description, carry-

ing the jacket, and upon searching him found narcotics.

sel read verbatim from Kelsey's deposition in which Kelsey described in detail his search of Minor, including dropping Minor's pants and searching the rim of his underwear.[21] Kelsey acknowledged that he had so testified in his deposition, although he claimed that he now remembered that it was Carney, not Minor, that he had searched. Furthermore, Minor himself in describing the search began by saying that "they took me back out of the squad car." Thus, particularly in view of the fact that Kelsey had been discredited as a witness generally, a reasonable jury could have concluded that Kelsey was in fact the officer who searched Minor or at least was involved in it. For the reasons already mentioned, if Kelsey was an unknown officer, the search of Minor would not have been privileged as to him.

It also appears that the form of the judgment as entered, to which no exception is taken, reflects an assumption that Kelsey was a participant. The compensatory damages in their entirety are awarded against Kelsey as well as the District.[22] And the punitive damage award is imposed only against Kelsey, not the unknown officer. Conversely, if Kelsey is not in fact the unknown officer, this would appear to moot out the issue whether the evidence supports the assault and battery award based on the strip search, since no judgment was ever entered based on that count.

### D. Intentional Infliction of Emotional Distress

■■■■ The District's final claim of error is that there was insufficient evidence for a reasonable jury to find for Minor on the intentional infliction of emotional distress claim. In the particular context of this appeal, we see no need to decide this issue. No particularized instructions were given to the jury on the issue of damages; that is, permitting certain types of damages to be awarded only with respect to particular counts. Rather, a single unitary instruction provided:

> If from the evidence and other instructions of the Court you find in favor of the plaintiff, then in assessing the damages to which the plaintiff is entitled you may take into consideration any of the following which you believe proximately resulted from the actions of the defendant:
>
> 1. The extent and duration of any bodily injuries sustained.
>
> 2. The effects such injuries have on the overall physical and mental health and well-being of the plaintiff.
>
> 3. Any physical pain and mental anguish the plaintiff has suffered.
>
> 4. Any inconvenience or discomfort that has been suffered by the plaintiff.
>
> 5. Any medical expenses that the plaintiff has incurred.

Clearly that instruction, not challenged on appeal, permitted the award of emotional damage—viz., to "mental health and well-being" and "mental anguish"—in connection with the all the counts against Kelsey (and, derivatively, the District). Case law likewise indicates that Minor could also recover any consequential emotional damages for the false arrest tort, *see, e.g., Marshall v. District of Columbia,*

21. Super, Ct. Civ. R. 32(a)(2) permits the deposition of a party to be used "for any purpose." The District suggests that the deposition itself may not have been formally moved into evidence. Minor asserts that this was in fact done during the final stages of the trial. The transcript on appeal is incomplete, ending with the final witness. Appellant has the responsibility of furnishing a record demonstrating error. *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982). In any event, the relevant portion of the deposition, admitted to by Kelsey, was effectively before the jury for any consideration and was admissible as an admission by a party, and the record on appeal shows no limiting instruction.

22. Even if no judgment could be entered against an unknown individual on the assault and battery count, it would still presumably be possible to impose liability on a theory of respondeat superior against the District, as the employer of the unknown tortfeasor.

391 A.2d 1374, 1380 (D.C.1978); *Neisner Bros., Inc. v. Ramos,* 326 A.2d 239, 240 (D.C.1974), as well as damages for emotional distress on the § 1983 count. *See* 1 SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 §§ 4:1, 4:9 (4th ed.1998) and cases cited therein. Furthermore, if Kelsey was indeed the unknown officer, he would be liable for emotional damages resulting from the assault and battery. *See, e.g., International Sec. Corp. v. McQueen,* 497 A.2d 1076, 1082 (D.C.1985) (citations omitted); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 9, at 40 (5th ed.1984). Thus, it appears to us that whatever damages Minor might have been awarded in connection with the intentional infliction of emotional distress count would already be awarded in connection with the other counts.

With respect to the punitive damages awarded against Kelsey alone, again no differentiation was made among the various counts. The jury was instructed generally that it could impose punitive damages only if it found that the acts of the defendant were "malicious and in willful, wanton, or reckless disregard of the plaintiff's rights." In instructing the jury on the elements of the § 1983 claim, the trial court instructed the jury that it could impose liability only if "it was the intent of the officer to intentionally, or with reckless disregard, undertake such actions as would violate clearly established constitutional rights of the plaintiff." Thus, the award of punitive damages did not depend upon liability for the emotional distress count but rather could embrace the totality of Kelsey's actions in connection with the events here.

Likewise, since we are affirming the judgment entered in Minor's favor and he would not appear to be entitled to any additional damages against the District under § 1983,[23] we see no reason on this

appeal to address the issue presented by Minor's cross-appeal.

*Affirmed.*

---

**23.** *See* NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, *supra,* § 4:15 (general bar against double recovery for same injury applicable to § 1983 claims); *cf. Woodward & Lothrop v. Hillary,* 598 A.2d 1142, 1147–48 (D.C.1991).