Eric YOUNG, Appellant,

v.

Marcus SCALES, et al., Appellees.

No. 03–CV–1515.

District of Columbia Court of Appeals.

Argued Feb. 15, 2005.
Decided April 21, 2005.

Robert E. Deso, with whom John V. Berry, Washington, DC, was on the brief, for appellant.

Deidra L. McEachern, for appellee.

Robert J. Spagnoletti, Attorney General of the District of Columbia, and Edward E. Schwab, Deputy Attorney General, and Mary L. Wilson, Assistant Attorney General, were on the statement in lieu of brief for the District of Columbia.

Before SCHWELB and WASHINGTON, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

Shortly after midnight on August 5, 2001, appellee Marcus Scales approached the driver's side of a parked auto (not a police vehicle) in which appellant Eric Young, a police officer off duty and out of uniform, was seated behind the steering wheel with his window open. Scales did not know Young but did know the woman (the other occupant of the car) sitting in the front passenger seat. He knew her to be a prostitute. Scales spoke to the woman and told her to get out of the car. Then, without speaking a word to Young, he commenced to stab him with a pocket knife which had a blade four to five inches long. Scales stabbed Officer Young several times, wounding him in the neck/face and leg.[1] Nevertheless, Young was able to get out of the car and chase Scales around the auto. During the chase, he then called out to a passing motorist that he was an off-duty police officer and asked that person to contact 911. Young ordered Scales to drop his knife and "stay right there," showing his badge and drawing his pistol. Scales dropped his knife but advised Young that he had caught him with a prostitute.[2] Therefore, he said he was going his way and suggested Young go his way. Young again ordered Scales to stay where he was, but Scales cursed Young and recounted later in his pretrial deposition: "I told him ... kill me—not you're going to have to kill me, kill me.... I turned my back on him and walked away and that's when I felt the shot in my right buttocks." Young had fired twice, striking Scales once. Scales was then placed under arrest.

Scales filed a complaint in the trial court, asserting, inter alia, a claim under 42 U.S.C. § 1983 that Young had used excessive force in effecting his arrest in violation of the Fourth Amendment.[3]

---

1. According to Scales' deposition, he might have stabbed Young in the neck. However, a final internal investigation report of the incident by the Metropolitan Police Department finds that "Young was cut by [Scales] on the right side of his face and stabbed in the left leg."

2. The record permits two competing possible scenarios: one was that Scales had caught Young making an improper contact with a prostitute, but the other was that Scales was preparing to rob Young who had been lured there by the prostitute. The trial court commented that the "parties dispute virtually every material fact that gave rise to the incident at issue."

3. His complaint contained eleven counts. Scales alleged assault, battery, negligence, negligence per se, false arrest, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, training and supervision and retention, a 42 U.S.C. § 1983 claim based on violation of the Fourth Amendment, and a 42 U.S.C. § 1983 claim based on violation of the Fourteenth Amendment. The only count involved on appeal is his 42 U.S.C. § 1983 claim based on violation of

Young sought judgment summarily on the ground that he had qualified immunity from this § 1983 claim because he arrested Scales after the latter had committed an assault with a dangerous weapon on his person and hence in his presence. The trial court, after discovery has been completed, rejected Officer Young's claim of qualified immunity, concluding that "a reasonable officer would have known that it was unlawful to shoot an unarmed suspect, who posed no threat to the community and no continuing threat to the officer." Now before us is Officer Young's interlocutory appeal from the order denying his motion for summary judgment on the § 1983 claim. *See Fulwood v. Porter,* 639 A.2d 594, 595 n. 1 (D.C.1994).

▮ The defense of qualified immunity shields government officials performing discretionary functions from liability for damages in actions brought under 42 U.S.C. § 1983 provided their conduct does not violate clearly established federal constitutional or statutory rights of which a reasonable person would have known. *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Sabir v. District of Columbia,* 755 A.2d 449, 453 (D.C.2000).

▮ Qualified immunity intends to strike "a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole,* 504 U.S. 158, 167, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Qualified immunity "seeks to ensure that defendants reasonably can anticipate when their conduct may give rise to liability, by attaching liability only if the contours of the right violated are sufficiently clear that a reasonable official would understand that

the Fourth Amendment, in which Scales asserts that "when Officer Young shot Mr.

what he is doing violates that right." *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (internal quotation marks and citation omitted). Police officers "should not be hindered by the threat of civil liability from attempting to perform their duties to the best of their abilities," as long as they are not violating clearly established constitutional or statutory rights. *District of Columbia v. Evans,* 644 A.2d 1008, 1016 (D.C.1994).

The Supreme Court has defined qualified immunity as "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Court noted that the privilege is "an immunity from suit rather than a mere defense to liability." *Id.* Thus, it is important to resolve the immunity question at the earliest possible stage in litigation. Otherwise, the privilege "is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 200–01, 121 S.Ct. 2151.

▮ The issue of whether an officer is entitled to qualified immunity is a question of law to be determined by the trial court. *District of Columbia v. Jackson,* 810 A.2d 388, 393–94 (D.C.2002). On appeal, we review it *de novo. See Anderson v. Abidoye,* 824 A.2d 42, 44 (D.C.2003).

▮ Determining whether the government officer has qualified immunity requires a two-fold inquiry. *Jackson,* 810 A.2d at 394 (quoting *Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151). The threshold inquiry is whether the plaintiff's allegations, if true, show that the officer's conduct violated a constitutional or statutory right. *Id.* If so, then a court should decide whether the right that had been violated was clearly established at the time the

Scales he used excessive force against Mr. Scales."

alleged violation occurred. *Id.*; *see also Sabir,* 755 A.2d at 454; *Fulwood,* 639 A.2d at 598. Thus, the plaintiff must prove that the defendant violated his constitutional or statutory right, which was clearly established at the time of the violation, in order to withstand a motion for summary judgment on the ground that a defendant had qualified immunity. *See Fulwood,* 639 A.2d at 600 (because appellees claiming injury would have the burden at trial of proving injury, they have burden to establish that officer violated their clearly established rights).

■ This court has suggested that a trial court in so-called "qualified immunity" cases should inquire whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jackson,* 810 A.2d at 394 (quoting *Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151). In other words, "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151; *see also District of Columbia v. Minor,* 740 A.2d 523, 530 (D.C.1999) (official must intentionally, or with reckless disregard, violate clearly established right before § 1983 claim is justified).

■ The Supreme Court has emphasized that the inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. Thus, to overcome qualified immunity, the right allegedly violated "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151

(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Scales argues that Young violated his Fourth Amendment right to be free from unreasonable seizures. Scales urges two grounds to support this argument. First, Scales argues that Young had no probable cause to arrest him because he had stabbed Young only to defend himself. Second, Scales contends that even if Young had probable cause to arrest him, it was unreasonable for Young to use deadly force to effect his arrest because Scales, after dropping his knife and walking away from Young, posed no immediate danger to Young or to any others. We are not so persuaded under the particular circumstances in this case.

■ Generally speaking, a party asserting self-defense as an affirmative defense has no burden to establish that he acted in self-defense. Rather, the opposing party needs to prove that the party claiming self-defense did not act in that way. *See Lopez v. United States,* 801 A.2d 39, 47–50 (D.C. 2002). However, in the instant case, the issue of self-defense arises in the context of qualified immunity, where Scales asserts self-defense in order to prove that he had a constitutional right to be free from arrest by Young. Therefore, Scales has the burden to establish that when he advanced on the parked car and, without a word, stabbed Young, he was acting in self-defense. *See Fulwood,* 639 A.2d at 600 (appellees have the burden to show that officer violated their clearly established rights).

■ In order to invoke a legitimate claim of self-defense, Scales must establish: "(1) there was an actual or apparent threat; (2) the threat was unlawful and immediate; (3) the defendant honestly and reasonably believed that he was in immi-

nent danger of death or serious bodily harm; and (4) the defendant's response was necessary to save himself from the danger." *Brown v. United States,* 619 A.2d 1180, 1182 (D.C.1992). The right of self-defense "arises only when the necessity begins, and equally ends with the necessity ...." *Binion v. United States,* 658 A.2d 187, 192–93 (D.C.1995) (internal marks omitted). However, it is clearly established that a party cannot "raise a legitimate self-defense claim when he went out of his way to look for trouble." *Brown,* 619 A.2d at 1182. In order to claim self-defense, a defendant "must do everything in his power, consistent with his safety, to avoid the danger and avoid the necessity of taking life. If one has reason to believe that he will be attacked, in a manner which threatens him with bodily injury, he must avoid the attack if it is possible to do so, and the right of self-defense does not arise until he has done everything in his power to prevent its necessity." *Sams v. United States,* 721 A.2d 945, 953 (D.C.1998) (quoting *Laney v. United States,* 54 App.D.C. 56, 58, 294 F. 412, 414 (1923)).

▬▬ In the instant case, according to Scales' deposition, he approached Young's parked vehicle with his pocket knife *open* to protect himself because he was aware that he was in a dangerous area of the city. Scales deposed that he had deliberately approached the driver's side of the car to give himself "a whole lot of room out here to run." However, after arriving there, he said in his deposition that he saw Young reach for something lodged between the front seats. Scales concluded it was a gun but he did not run away as he had prepared himself to do in case he encountered trouble. Rather, Scales, without saying a word to Young, reached into the car and commenced stabbing Young, a complete stranger. We are unable to conclude that a reasonable jury under these particular circumstances could conclude that Scales was acting in self-defense when he commenced stabbing Young. *See Sams,* 721 A.2d at 953 (self-defense is "not available to a defendant who deliberately puts himself in a position where he has reason to believe that his presence will provoke trouble, even if his purpose in putting himself in that position was benign"); *Howard v. United States,* 656 A.2d 1106, 1111 (D.C. 1995) (upholding trial court's refusal to instruct jury on self-defense on ground that defendant had put himself "in a position where violence was likely to result").

We turn now to the argument by Scales that Young used excessive force in effecting his arrest. Scales argues that Officer Young firing two shots at him after he had dropped the knife and commenced to walk away from the auto was unconstitutionally excessive because Scales, by dropping his knife and walking away from Officer Young, no longer posed an immediate threat either to Young or to any others.

▬▬ Claims that law enforcement officers have used excessive force during arrest or other seizure are analyzed under the Fourth Amendment and require application of its "objective reasonableness" standard. *Brosseau v. Haugen,* —— U.S. ——, ——, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 (2004); *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Applying this standard requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (internal quotation marks omitted). Courts, in order to decide whether a particular use of force is objectively reasonable, examine the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

It is recognized that officers are often forced to make split-second judgments under circumstances that are tense, uncertain, and rapidly evolving. Hence, the circumstances of each case must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Also, any subjective beliefs and intents held by police officers "are irrelevant to the defense of qualified immunity," and the crux of the inquiry is "whether the force applied was reasonable." *Sabir,* 755 A.2d at 453 (quoting *Wardlaw v. Pickett,* 303 U.S.App. D.C. 130, 136, 1 F.3d 1297, 1303 (1993)). A shooting is objectively reasonable in preventing the escape of a felon only when "it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Thus, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 12, 105 S.Ct. 1694.

The record here reflects that late at night in a dangerous area of the city an off-duty police officer was sitting in a parked, unmarked car when Scales voluntarily approached the auto. Without ex-

changing a word with the officer, Scales began stabbing him with a four-to-five inch bladed knife. Although Young identified himself as an police officer and ordered Scales to drop the knife and "stay right there," Scales dropped the knife but cursed the officer and refused to obey the order to "stay right there." Also, he ignored a second command to stop and actually dared the officer to shoot him.[4] Given the violent and unprovoked nature of the crime Scales committed and the reckless manner in which he reacted when the victim identified himself as a police officer, we are not persuaded that a reasonably prudent officer could simply shrug his shoulders and allow Scales to walk off into the night. Young, already stabbed by Scales without warning or reason, was the only officer on the scene; he could not know when other officers would arrive; he could not be sure that Scales had only a knife on his person; and, he had to make a split-second judgment in a rapidly evolving situation when Scales walked away. We are not persuaded under these particular circumstances that it was either unreasonable or unnecessary for Young to fire at Scales to prevent his escape. *See Brosseau,* —— U.S. ——, 125 S.Ct. 596, 160 L.Ed.2d 583 (it was not clearly unreasonable for officer to shoot fleeing suspect where suspect attempted to escape in his car after officer repeatedly ordered him to surrender); *Smith v. Freland,* 954 F.2d 343 (6th Cir.1992) (officer did not act unreasonably in shooting plaintiff's son while son fled in his car after high-speed chase, even if son was unarmed and son's car was totally surrounded); *Ford v. Childers,* 855 F.2d 1271 (7th Cir.1988) (officer acted reasonably in shooting at a fleeing bank robbery suspect after giving suspect two warnings).

---

4. In light of Scales's action in daring Officer Young to shoot, no further warning of conse-

quences was necessary under *Garner.*

We note that the conscientious trial judge, in reaching his decision, points to a document in the record, the final internal investigation report of this incident by the Metropolitan Police Department ("Report"). The Report explicitly states that its purpose is to review policies and procedures with the application of "hindsight vision." The Report acknowledges that "[w]hile it is clear that a strict interpretation of relevant Supreme Court decisions support the legality of shooting at fleeing felons, the department's policy sets much narrower limits." [5]

We note that the Supreme Court's ruling has explicitly stated that the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Therefore, although Young may have violated the police department's policies regarding use of force, we are unable to conclude that the particular facts here demonstrate an unreasonableness on the part of Young so as to deny qualified immunity with respect to Scales's § 1983 claim.[6] Although a municipality may choose to hold its officers to a stricter standard than the Constitution requires, we are bound by the latter rather than the former in determining claims brought under § 1983. *See Smith,* 954 F.2d at 347–48 (if court determines reasonableness of officer's conduct pursuant to police department policies, officers held to strict policies are more likely to be found to commit constitutional violations than those held to lax policies. That result not only unwarrantedly extends constitutional law but also encourages cities to adopt the least restrictive policies possible); *Ford,* 855 F.2d 1271 (despite the fact that the officer was found to have violated the city's police manual, court refused to consider local rules, limited its attention to *Garner* test and concluded that the officer acted reasonably in shooting at a fleeing bank robbery suspect).

We conclude that Scales fails to establish that under the particular circumstances here Young violated his clearly established Fourth Amendment right. Thus, Officer Young was entitled to qualified immunity on the § 1983 claim. Accordingly, the case is remanded with instructions to enter summary judgment in favor of Young on that claim and for further proceedings consistent with this opinion.

*So ordered.*

---

**5.** The Metropolitan Police Department Use-of–Force General Order 901.7, in relevant part, provides as follows:

> Members may use deadly force to apprehend a fleeing felon ONLY when every other reasonable means of affecting the arrest or preventing the escape has been exhausted AND,
>> a. The suspect fleeing poses an immediate threat of death or serious bodily harm to the member or others; OR
>> b. There is probable cause to believe the crime committed or attempted was a felony, which involved an actual or threatened attack which could result in death or serious bodily harm; AND

> (1) There is probable cause to believe the person fleeing committed or attempted to commit the crime, AND
> (2) Failure to immediately apprehend the person places a member or the public in immediate danger of death or serious bodily injury; AND
> (3) The lives of innocent persons will not be endangered if deadly force is used.

**6.** Obviously, we take no position with respect to whatever administrative action the Metropolitan Police Department may take in the instant case.