**Marcus SCALES, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 05–CV–1446.**

District of Columbia Court of Appeals.

Argued March 15, 2007.

Decided June 18, 2009.

Deidra L. McEachern, Washington, DC, for appellant.

Mary L. Wilson, Senior Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General of the District of Columbia at the time the brief was filed, and Todd S. Kim, Solicitor General, were on the brief, for appellee.

Before KRAMER and THOMPSON, Associate Judges, and STEADMAN, Senior Judge.

KRAMER, Associate Judge:

Appellant Marcus Scales brought suit against the District of Columbia and Officer Eric Young alleging (1) assault; (2) battery; (3) negligence; (4) negligence *per se;* (5) false arrest; (6) false imprisonment; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; (9) negligent hiring, training, supervision and retention; (10) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983; (11) violation of the Fourteenth Amendment through deprivation of liberty; and (12) negligent misuse of weapons. The trial court denied Officer Young's motion to

dismiss the Fourth–Amendment–based § 1983 claim against him on the grounds of qualified immunity, but this court reversed in an interlocutory appeal. *Young v. Scales*, 873 A.2d 337 (D.C.2005).[1] On remand, the trial court granted the government's motion for summary judgment on all counts. We affirm in part and reverse in part.

## I.

In the interlocutory appeal, the court summarized the facts in the light most favorable to Scales:

Shortly after midnight on August 5, 2001, appellee Marcus Scales approached the driver's side of a parked auto (not a police vehicle) in which appellant Eric Young, a police officer off duty and out of uniform, was seated behind the steering wheel with his window open. Scales did not know Young but did know the woman (the other occupant of the car) sitting in the front passenger seat. He knew her to be a prostitute. Scales spoke to the woman and told her to get out of the car. Then, without speaking a word to Young, he commenced to stab him with a pocket knife which had a blade four to five inches long. Scales stabbed Officer Young several times, wounding him in the neck/face and leg. Nevertheless, Young was able to get out of the car and chase Scales around the auto. During the chase, he then called out to a passing motorist that he was an off-duty police officer and asked that person to contact 911. Young ordered Scales to drop his knife and "stay right there," showing his badge and drawing his pistol. Scales dropped his knife but advised Young that he had caught him with a prostitute. Therefore, he said he was going his way and suggested Young go his way. Young again ordered Scales to stay where he was, but Scales cursed Young and recounted later in his pretrial deposition: "I told him ... kill me—not you're going to have to kill me, kill me.... I turned my back on him and walked away and that's when I felt the shot in my right buttocks." Young had fired twice, striking Scales once. Scales was then placed under arrest.

*Young, supra,* 873 A.2d at 340 (footnotes omitted).

Scales claims that he stabbed Officer Young in self-defense because he saw Officer Young reaching for a gun. In *Young,* the court was "unable to conclude that a reasonable jury under these particular circumstances could conclude that Scales was acting in self-defense when he commenced stabbing [Officer] Young." *Id.* at 343. Moreover, because Officer Young had probable cause to believe that Scales posed a significant threat to the physical safety of others, the court was "not persuaded ... that it was either unreasonable or unnecessary for Young to fire at Scales to prevent his escape." *Id.* at 344.

On remand, the trial court apparently construed the ruling that it was neither

---

1. Before the interlocutory appeal, the trial court had granted the District of Columbia's motion for summary judgment with respect to the count alleging a violation of Scales's Fourteenth Amendment rights. In his brief in this appeal, Scales at this point appears to have recognized the merit of the trial court's legal conclusion based on *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), that "the gravamen of [Scales's] complaint is excessive force, [a] class of allegations [that] is appropriately analyzed under the Fourth Amendment, not the Fourteenth Amendment," and we deem the claim abandoned, particularly given that the trial court's ruling was an indisputably correct one. Moreover, the Fourteenth Amendment does not apply to the District of Columbia. *See, e.g., Dean v. United States,* 938 A.2d 751, 759 n. 10 (D.C.2007).

unreasonable nor unnecessary for Officer Young to fire at Scales to prevent him from escaping to mean that none of Scales's claims should proceed. Concluding that when the court in *Young* discussed the allegations of excessive force used by Officer Young, it was "not talking about qualified immunity," but rather "talking about ... the reasonableness of the force used by the officer," the trial court found that the appellate court's conclusion in Officer Young's favor constituted a "finding that the officer's actions [were] reasonable." The trial court considered itself bound by this "finding," and therefore granted summary judgment in favor of the District on each of Scales's claims.

## II.

The sole question we must answer in this appeal is the extent to which our decision in *Young* barred Scales from continuing to pursue his claims. He argues that none of his claims is barred by that opinion, and that the trial court erred by taking the opinion to be binding in any respect other than the determination that Officer Young himself was entitled to qualified immunity. As explained below, we agree with Scales that the effect of *Young* is limited, but it is not quite so limited as he claims.

### A. Standard of Review

■■■ This court reviews grants of summary judgment motions *de novo* and applies the same standards as the trial court. *Magwood v. Giddings*, 672 A.2d 1083, 1084 (D.C.1996). Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. This court conducts an independent review of the record, in the light most favorable to the non-moving party ... Once a moving party makes an initial showing that the record presents no genuine issue of material fact, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial.

*Id.*

### B. *Young's* Impact on Scales's Fourth Amendment and § 1983 Claim

■■■ In *Young*, the issue in the interlocutory appeal was whether Officer Young would enjoy qualified immunity for his actions, particularly that of shooting Scales.[2] The trial court interpreted this

2. Precedent from the Supreme Court has encouraged lower courts to deal with this question as early as possible in the litigation, *see Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Young, supra*, 873 A.2d at 341 ("[I]t is important to resolve the immunity question at the earliest possible stage in litigation."), ideally on a motion for summary judgment before the discovery process begins. *See, e.g., Durso v. Taylor*, 624 A.2d 449, 454 (D.C.1993) ("[I]t is intended that the immunity question be susceptible to disposition on summary judgment and that discovery be foreclosed until the issue is resolved."). Doing so is not generally a problem, because a court considering whether the criteria of the qualified immunity inquiry are satisfied usually faces a question purely of law, and thus the particular factual evidence that discovery would yield is in a sense irrelevant. *See Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.' ").

We note, however, that from time to time there may be predicate factual issues disputed by the parties regarding the issue of immunity which must be submitted to a trier of fact, "but the 'purely legal question on which [the] claim of immunity turns,' remains an issue

decision to be making a *finding of fact* "that the officer's actions [were] reasonable." This court, however, in addressing Scales § 1983 claim for excessive force in violation of the Fourth Amendment in *Young,* did not resolve any issue of material fact, but rather took Scales's allegations in the light most favorable to him for purposes of resolving the federal immunity question only. Granting an officer qualified immunity is not a decision on the merits of the claim against him, and doing so does not purport to resolve any factual dispute between the parties. Instead, it exhibits, as the Supreme Court reiterated in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), recognition that officers may enjoy "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) *(quoted in Saucier, supra,* 533 U.S. at 201, 121 S.Ct. 2151). Therefore, the trial court erred in concluding that this court had made any findings of fact. *Young* merely took Scales's allegations to be true for the sole purpose of resolving the federal question before it and made the legal conclusions necessary to determine whether Officer Young was entitled to qualified immunity, ultimately holding that he was entitled to immunity because the allegations, taken as true, had "fail[ed] to establish that under the particular circumstances here [Officer] Young violated his clearly established *Fourth Amendment* right" as a matter of law. *Young, supra,* 873 A.2d at 344.

Nonetheless, Scales argues that when *Young* decided the qualified immunity issue, it did not decide whether he could proceed with his § 1983 claim for excessive force in violation of the Fourth Amendment, because, as the *Saucier* court held, a "ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest." 533 U.S. at 197, 121 S.Ct. 2151. This language could be read to support Scales's position, but the context shows otherwise.

■ As we noted in *Young,* whether a government officer has qualified immunity requires a two-part inquiry. "The threshold inquiry is whether the plaintiff's allegations, if true, show that the officer's conduct violated a constitutional or statutory right. If so, then a court should decide whether the right that had been violated was clearly established at the time the alleged violation occurred." 873 A.2d at 341–342 (citing *District of Columbia v. (Felicia) Jackson,* 810 A.2d 388, 394 (D.C. 2002); *Saucier, supra,* 533 U.S. at 201–02, 121 S.Ct. 2151) (internal citations omitted).[3] If either of the tests is not met, the officer has qualified immunity that bars the plaintiff's suit. *See id.* (Qualified immunity is "an immunity from suit rather than a mere defense to liability." (quoting *Saucier, supra,* 533 U.S. at 200, 121 S.Ct. 2151)).

In *Saucier, supra,* the district and appellate courts had "concluded that the sec-

---

for the court." *Sabir v. District of Columbia,* 755 A.2d 449, 455 (D.C.2000) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). At the same time, the determination cannot be taken to be more than what it is: a legal determination of whether or not an officer will enjoy protection from a federal cause of action.

**3.** The Supreme Court recently modified the *Saucier* test by permitting courts to begin by determining whether the second prong has not been satisfied rather than being required first to address the first prong. *Pearson v. Callahan,* —— U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In *Young,* we followed the then-existing procedure in commencing with the first prong.

ond step of the qualified immunity inquiry and the merits of the Fourth Amendment excessive force claim are identical, since both concern the objective reasonableness of the officer's conduct in light of the circumstances the officer faced on the scene." 533 U.S. at 199–200, 121 S.Ct. 2151. This was erroneous, however, because holding that there was a violation of a constitutional right establishes at most that the first prong of the test has been met. It says nothing about the extra demand imposed by the "further dimension" of the second prong. That dimension requires that an affirmative answer be given to the question of " 'whether the right was clearly established' at the time of the conduct, the 'dispositive inquiry' [ ] being 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " (Felicia) Jackson, supra, 810 A.2d at 394 (quoting Saucier, supra, 533 U.S. at 201–02, 121 S.Ct. 2151). That is, a factual proffer "show[ing] the officer's conduct violated a constitutional right," Saucier, supra, 533 U.S. at 201, 121 S.Ct. 2151, is insufficient standing alone to strip the officer of qualified immunity, because if the right was not clearly established at the time, the officer may still enjoy its protection. Thus, in that sense, the inquiries of whether the right underlying the § 1983 claim was violated and whether the officer is entitled to qualified immunity are distinct. Accordingly, in some cases where a court determines that an officer is entitled to qualified immunity, it does so because it has determined that notwithstanding a violation of the constitutional right in question, the plaintiff should not be permitted to press the § 1983 claim any further because the policies of the very statute providing the right of action would not be served.

■ In this case, by contrast, when the court in Young determined that Officer Young was entitled to qualified immunity, we effectively disposed of the Fourth Amendment excessive force argument upon which Scales's § 1983 claim is predicated because we held that Scales could not even meet the first prong of the test by "show[ing] the officer's conduct violated a constitutional right." Saucier, supra, 533 U.S. at 201, 121 S.Ct. 2151. Young held that Officer Young was entitled to immunity because, even taking the facts in the light most favorable to Scales, Scales had failed to establish his Fourth Amendment rights had been violated as a matter of law. See Young, supra, 873 A.2d at 344. ("We are not persuaded under these particular circumstances that it was either unreasonable or unnecessary for Young to fire at Scales to prevent his escape."). Scales's excessive force claim cannot proceed because his claim was and is predicated on the Fourth Amendment, the same right that Young specifically held was not violated as a matter of law. Because Scales failed to establish that Officer Young violated the Fourth Amendment as a matter of law even when taking the facts in the light most favorable to him, see Young, supra, 873 A.2d at 340, 344, the law of the case now precludes Scales from continuing to press that claim. See Kleinbart v. United States, 604 A.2d 861, 866 (D.C.1992). Accordingly, we affirm the trial court's decision to grant summary judgment in favor of the District on this claim.[4]

---

4. The District could be liable under § 1983 only if its policies had caused Young to violate Scales's rights under federal law. See Monell v. Dep't of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, because we found in Young that Scales's allegations taken as true failed to establish a Fourth Amendment violation as a matter of law, neither Young nor the District can be liable under § 1983.

## C. *Young's* Impact on Scales's Common Law Claims

■ As noted above, the holding of *Young*, which was based on the law of qualified immunity under § 1983, should not have been construed by the trial court as making any findings of fact because, as discussed above, the issue of whether or not qualified immunity is available is one of law. Actual findings affecting the common law claims could not be made by an appellate court and indeed were not made. Accordingly, the trial court erred by assuming that the discussion in *Young* of the *factual background* of the matter had determinative force with respect to the state law claims. *Young's legal conclusions*, however, do affect Scales's common law false arrest claim.

### 1. False Arrest

■ There are two affirmative defenses (which are distinct from "qualified privilege," discussed *infra* ) that an officer can assert to avoid liability for false arrest: (1) the "probable cause test," which requires an objective showing and is usually harder to meet, or (2) the "partially subjective test," which is "usually easier-to-meet." *District of Columbia v. Murphy*, 635 A.2d 929, 932 (D.C.1993). Under the probable cause test, if a police officer "has so-called constitutional probable cause to arrest, determined by reference to the objective standard used to determine probable cause in a criminal proceeding ... the arrest will be lawful and the officer accordingly will have a complete defense to a false arrest claim...." *Id.* at 931–32. The probable cause test is based entirely on the objective facts and in this context. The court does not consider "what a police officer may have actually, even reasonably, perceived the facts to be." *Id.* at 932. However, "[t]he law of this jurisdiction ... also allows a lesser, partially subjective test to support a police officer's defense to a false arrest claim." *Id.* Under the "partially subjective test," "it will suffice if the officer can demonstrate that (1) he or she believed, in good faith, that his [or her] conduct was lawful, and (2) this belief was reasonable." *Id.* (citations and internal quotation marks omitted). In order for the partially subjective test to apply, however, the District must affirmatively rely on it; otherwise, the objective "probable cause" test applies. *Karriem v. District of Columbia*, 717 A.2d 317, 320 n. 8 (D.C. 1998).

■ In this case, Scales's suit for false arrest must fail as a matter of law because there was probable cause to arrest him based on his stabbing officer Young. We held in *Young* that Scales failed to show that "he had a constitutional right to be free from arrest by [Officer] Young." *Young, supra*, 873 A.2d at 342. That is, Scales's argument that Officer Young had "no probable cause to arrest him" failed. Since there was probable cause to arrest Scales as a matter of law, *see id.* at 342–43, Scales's suit for false arrest was barred as a matter of law, and we affirm the trial court's grant of summary judgment in favor of the District as to that claim.

### 2. Scales's Other Common Law Claims

Our effort here is to clarify whatever *Young* may have left ambiguous. The questions of whether Officer Young had a qualified privilege to act as he did or an affirmative defense with respect to any of the remaining common law claims must be remanded because the answers to those questions turn in part upon fact-based analyses under each of his various claims and their applicable tests, and there were not enough findings below to create a sufficient record. To see why such findings were needed, a short discussion of two of

Scales's common law claims—assault and battery, and negligence—and their relationship to a police officer's qualified privilege or affirmative defenses is instructive.

### a. Assault and Battery

■■■■ A police officer may have a qualified privilege in an assault and battery case. "A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *Evans–Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C.2007) (citing *Jackson v. District of Columbia*, 412 A.2d 948, 955 (D.C.1980) (citing RESTATEMENT (SECOND) OF TORTS § 18 (1965))). "The officer's judgment is to be reviewed 'from the perspective of a reasonable officer on the scene,' with allowance for the officer's need to make quick decisions under potentially dangerous circumstances." *Rogala v. District of Columbia*, 333 U.S.App. D.C. 145, 158, 161 F.3d 44, 57 (1998) (quoting *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C.1993)). Thus, the test for qualified privilege in an assault and battery suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation. No such findings, one way or the other, are in the record here.

### b. Negligence

■■■■ In *Young* we noted that, although Officer Young was entitled to qualified immunity as to Scales's § 1983 suit, "a municipality may choose to hold its officers to a stricter standard than the Constitu-

tion requires...." *Young, supra,* 873 A.2d at 345.[5] Thus, even though the officer did not violate Scales's constitutional rights, *id.,* he could still be liable under a different standard. In order to prevail on a negligence cause of action, the plaintiff must prove "the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Evans–Reid, supra,* 930 A.2d at 937 n. 6 (citing on p. —— *Etheredge, supra,* 635 A.2d at 917 (quoting *Toy v. District of Columbia,* 549 A.2d 1, 6 (D.C.1988) (quoting *Meek v. Shepard,* 484 A.2d 579, 581 (D.C.1984)))). The applicable standard of care is that of a reasonably prudent police officer. *Smith v. District of Columbia,* 882 A.2d 778, 788 (D.C.2005). Expert testimony is required to prove the standard of care because "[t]he applicable standard of care in cases of this kind is 'beyond the ken' of the average lay juror...." *Etheredge, supra,* 635 A.2d at 917. The police department policies discussed in *Young* may be relevant to a determination of whether Officer Young conducted himself in accordance with the standard of care because, "although internal guidelines cannot themselves embody the standard of care, the 'procedures may properly be received in evidence as bearing on the standard of care.'" *Snowder v. District of Columbia,* 949 A.2d 590, 603 (D.C.2008) (quoting *District of Columbia v. Wilson,* 721 A.2d 591, 598 n. 13 (D.C.1998)).

■■■■ Nonetheless, difficulties can arise when, as here, a plaintiff alleges multiple tort claims in connection with the use of force by an arresting police officer. In *Smith, supra,* the plaintiff's suit alleged, *inter alia,* negligence and assault and battery. 882 A.2d at 780. The negligence

---

5. Indeed, as we have said elsewhere, "qualified immunity from § 1983 does not preclude a suit based on common law negligence," *District of Columbia v. Evans,* 644 A.2d 1008, 1019 (D.C.1994), or any other state law tort, for that matter.

and assault and battery claims were both based on alleged use of excessive force by police officers. *Id.* at 790–91. There, the court reiterated that

> if, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to a jury, that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care.

*Id.* at 792 (quoting *District of Columbia v. Chinn,* 839 A.2d 701, 711 (D.C.2003)). Thus, if Scales does not "present a basis independent of excessive force to support his negligence count," then his negligence claim will not be allowed to go to the jury.[6] *Id.* at 793. This caveat is especially important to note in light of the fact that *Young* held that the force used in this case was not excessive as a matter of constitutional law even when the facts were taken in the light most favorable to Scales. *Young, supra,* 873 A.2d at 344 ("We are not persuaded ... that it was either unreasonable or unnecessary for [Officer] Young to fire at Scales to prevent his escape.").

### c. Lack of Record on Appeal

As noted above, the record is currently insufficiently developed for us to decide whether summary judgment should have been granted on Scales's remaining common law claims following *Young.* Although *Young* precludes Scales's Fourth Amendment-based § 1983 suit and his suit for false arrest, *see* Part II.B, *supra,* the record lacks the findings needed to support disposition of Scales's remaining claims, including the claims we have not specifically discussed in this opinion. For example, at the very least, it is entirely unclear from the record what motivated Officer Young to shoot Scales. We decline to address whether Officer Young's motivation is a fact in genuine dispute, and leave that question for the trial court to decide in the first instance. *See New 3145 Deauville, L.L.C. v. First Am. Title Ins. Co.,* 881 A.2d 624, 630 (D.C.2005) (holding that "the preferable course of action is to permit the trial court to address in the first instance these further arguments"). Indeed, we are certain that on remand the trial court will give due consideration to all of Scales's remaining claims and their applicable tests.

### III.

For the foregoing reasons, the trial court's grant of summary judgment is affirmed with respect to Scales's Fourth Amendment—based § 1983 claim, his claim for false arrest, and his Fourteenth Amendment claim,[7] but, with respect to all of his other claims, reversed and remanded for further proceedings consistent with this opinion.

*So ordered.*

---

6. We also note that, because Scales is suing the District of Columbia, his negligence cause of action, like all of his causes of action, is dependent on his compliance with D.C.Code § 12–309 (2001) ("An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.").

7. *See* note 1.